# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

JUL 0 3 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. |
| | ) |
| BRIAN FORMICONI | ) 2:18-MJ-0129 CKD |
| | ) |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___January 2015 through July 3, 2018___ in the county of ___Placer___ in the ___Eastern___ District of ___California___, the defendant(s) violated:

*Code Section and Offense Description*

The possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), the receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), and the distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2).

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

_____
*Complainant's signature*

HSI, SA Dana Unger
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___July 3, 2018___

_____
*Judge's signature*

City and state: ___Sacramento, CA___

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF SPECIAL AGENT DANA M.UNGER
## IN SUPPORT OF COMPLAINT

I, Dana M. Unger, being duly sworn, depose and state:

1.   I am a Special Agent with the U.S. Department of Homeland Security, United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed since September 2004.  I am presently assigned to the Office of the Assistant Special Agent in Charge, Sacramento (HSI/SO), where my primary duty is to investigate individuals involved in the online exploitation of minors including violations of Title 18, United States Code, Section 2251 and 2252.  I am responsible for conducting federal investigations relating to crimes involving the sexual exploitation of children.  I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and have received basic, advanced, and on-the-job training in the investigation of cases involving the sexual exploitation of children and the use of the Internet and computers generally to transmit child pornography.  In the course of my employment, I have served or assisted in serving search warrants; seized numerous items of computer equipment and software; and I have participated in several investigations involving computer forensics, including investigations related to child pornography and exploitation.

2.   I have received training in the area of identifying and investigating child pornography and child exploitation crimes, and as part of my duties have observed and reviewed numerous examples of child pornography in all forms of media, including computer media.  In addition, I have assisted in the execution of multiple search warrants relating to child exploitation investigations.  The following information is based upon the

1

investigation that I have conducted and upon my conversations with other law enforcement officers, including, but not limited to, officers who engaged in numerous investigations and undercover operations involving child pornography.

## INTRODUCTION

3.   The Department of Homeland Security, Homeland Security Investigations, received information from the Royal Canadian Mounted Police (RCMP) that a Kik messenger user with the username "buzzkill17421" was knowingly trading visual depictions of minors engaged in sexually explicit conduct within the definition in 18 U.S.C. § 2256 with other Kik users.  "Buzzkill17421" was identified as BRIAN FORMICONI ("FORMICONI").  For that reason, this affidavit is made in support of a criminal complaint and application for an arrest warrant for FORMICONI for distribution of child pornography.

4.   The statements in this affidavit are based in part on information provided by other law enforcement agents, as well as my own investigation of this matter.  Since this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that FORMICONI has violated 18 U.S.C. § 2252(a).

## STATUTORY AUTHORITY

5.   This affidavit is submitted to establish that there is probable cause to believe that FORMICONI committed violations of 18 U.S.C. § 2251, relating to production of child

pornography, and § 2252, relating to possession, receipt, distribution, and transportation of material involving the sexual exploitation of minors.

- 18 U.S.C. § 2251(a) prohibits any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in any sexually explicit conduct for the purpose of producing any explicit depiction of such conduct or for the purpose of transmitting a live depiction of such conduct. 18 U.S.C. § 2251(e) punishes attempts to violate this statute.

- 18 U.S.C. § 2252(a)(1) prohibits the knowing transportation using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce of visual depictions of minors engaged in sexually explicit conduct.

- 18 U.S.C. § 2252(a)(2) prohibits the knowing receipt or distribution, by computer or mail, of any visual depiction of minors engaging in sexually explicit conduct, if the visual depiction has been mailed, shipped, or transported in interstate or foreign commerce, or if it contains materials that have been so mailed, shipped, or transported, by any means, including by computer.

**DEFINITIONS**

6. The following non exhaustive list of definitions applies to this Affidavit:

   a. "Child Pornography" includes the definition in 18 U.S.C. § 2256(8), any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in

3

sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

b.    "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See 18 U.S.C. § 2256(5).

c.    "Minor" means any person under the age of eighteen years.  See 18 U.S.C. § 2256(1).

d.    "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.  See 18 U.S.C. § 2256(2).

e.    "Computer" is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

f.    The "Internet" is defined as a worldwide network of computers.  It is a self governing network devoted mostly to communication and research and has millions of users worldwide.  The Internet is not an online service but

4

a collection of tens of thousands of computer networks, online services, and single user components.

g.     The Uniform Resource Locator (URL) is the address of a resource or file located on the Internet, also called a "domain name".

h.     "Internet Service Providers" or "ISPs" are commercial organizations, which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e mail, remote storage, and co location of computers and other communications equipment.  ISPs can offer various means by which to access the Internet including telephone based dial up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription.  ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports.  Many ISPs assign each subscriber an account name such as a user name or screen name, an e mail address, and an e mail mailbox and the subscriber typically creates a password for the account.  By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password.

i.     "ISP Records" are records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities).  These records may include account application information,

5

subscriber and billing information, account access information (often times in the form of log files), e mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows for both temporary and long term storage of electronic communications and many other types of electronic data and files.

j.      "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

k.      "Hash value" refers to a mathematical algorithm generated against data to produce a numeric value that is representative of that data. A hash value may be run on media to find the precise data from which the value was generated. Hash values cannot be used to find other data.

l.      A "JPEG" is a graphic image file. Other known graphic image files include "GIF", "TIFF", "RAW", and "BMP".

m.      An "MPEG" is a video image file. MPEG files are generally larger than JPEG files and require the user to have a computer with sufficient

processor speed, internal memory, and empty hard disk space.  MPEG viewer

software is also needed to play the files.

## CHARACTERISTICS COMMON TO PERSONS WHO DOWNLOAD AND POSSESS CHILD PORNOGRAPHY

7.   Based upon my training and experience and the training and experience of other

agents with whom I work and with whom I have spoken, I know that the following

characteristics are oftentimes found in varying combinations in people who possess,

receive, distribute, or transport child pornography:

  a.   Child pornography collectors view children as sexual objects.

  b.   Child pornography collectors collect sexually explicit and other erotic images

     of minors that they use for their own sexual gratification and fantasy.

  c.   Child pornography collectors rarely, if ever, dispose of sexually explicit

     images of minors because the images are treated as prized possessions.  They

     store such images in different formats including photos, printouts, magazines,

     videotapes, and forms of digital media such as hard drives, diskettes, and CD

     ROMs.  They store such images in different places including their home, their

     car, and other areas under their control.  For example, laptops, electronic

     storage media, and child pornography are often secreted in compartments or

     trunks of vehicles so that those persons may hide, transport, or take the

     material to Internet or wi-fi locations so that they can access, trade, or add to

     their child pornography collections.

  d.   Child pornography collectors may use sexually explicit images of minors as a

     means of reliving fantasies or actual sexual encounters.  They also use the

     images as keepsakes and as a means of gaining acceptance, status, trust, and

7

psychological support by exchanging, trading, or selling the images to other people with similar interests.

e. Child pornography collectors go to great lengths to conceal and protect from discovery their collection of sexually explicit images of minors. They may use encryption software to protect their child pornographic files. They may have passwords to access programs or to control encryption that are written down and located in the vicinity of their computer, or located on their person. They may place child pornographic files in directories or folders on their computer or other digital storage media not typically reserved for image or video files. They may change file names of sexually explicit images in an attempt to hide such images from a forensic review. They may change the extension on such image files in an effort to disguise them as a word processing file. They may also transfer such files downloaded from the Internet to removal storage media including but not limited to computer disks, thumb drives, digital cameras, smart cards, and cellular phones, and then attempt to erase the files from computer hard drives, in an effort to hide evidence of their download activity.

f. If child pornography collectors have had sexual contact with a minor, they frequently have visual depictions of the minor(s) with whom they have had sexual contact. If a picture of a minor is taken by such a person depicting the minor in the nude, there is a high probability the minor was used to produce sexually explicit images to be traded with people with similar interests. If pornographic depictions of a minor were produced as mentioned above, an

8

analysis of the cameras, scanners, or webcams in the possession of the subject may yield clues as to what device was used in the commission of such crime. Such analysis would require the removal of the device to a laboratory setting.

g.  If child pornography is found on the hard drive of a child pornography collector's computer, and his computer was connected to the Internet, there is a strong likelihood that the person received the images of child pornography from the Internet, either from Internet websites or groups devoted to child pornography, or from other individuals who sent the images via email or file sharing program.

h.  Child pornography collectors who acquire sexually explicit images of minors from the Internet, will frequently bookmark the locations (i.e. websites, news groups, and other locations) on the Internet from which they accessed child pornographic images.  By bookmarking such locations, these collectors can readily gain access to such sites.

i.  Child pornography collectors also tend to collect child erotica because it is more readily available, partially satisfies their sexual fantasies, and is often intermixed with child pornography on the Internet.

## TOOLS OF THE INTERNET

8.  Based upon my knowledge, training and experience in child exploitation and child pornography investigations and the experience and training of other law enforcement officers with whom I have had discussions, I know that the development of computers has also revolutionized the way in which child pornography collectors interact with, and

9

sexually exploit, children. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

    a.  Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

    b.  The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial ISPs, such as America Online, Inc., AT&T, and Comcast, to name a few, that allow subscribers to dial a local number and

connect to a network that is, in turn, connected to the host systems. Host computers, including ISPs, allow e mail service between subscribers and sometimes between their own subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet. Individuals who use the Internet can communicate electronically by using e mail. E mail messages can contain text, data, or graphic images. This type of communication is private in that it is directed from one Internet user to another. Internet users can also communicate and trade images of child pornography using Instant Messaging. Instant Messaging is "real time" communication in that the persons communicating are engaging in online dialog. This means of communication, like e mail, is private in that it is one Internet user communicating specifically, and exclusively, with another.

c. The Internet allows users, while still maintaining perceived anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) web sites and social networking sites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world to be made as easily as calling next door. Additionally, these communications can be quick and relatively secure. The ease of trading and downloading child pornography via the Internet allows such collectors to increase the number of

images in their collections quite rapidly. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the web sites and images accessed by the recipient.

d.  A computer's capability to store images in digital form makes it an ideal repository for child pornography. A single USB flash drive can store thousands of images and millions of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 500 gigabytes are not uncommon. These drives can store hundreds of thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime". Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail. Digital evidence of the results of web browsing can often be found on the hard drive of a computer during a forensic examination. In addition, the dialog and image downloads created when corresponding via email and instant message

are generally stored in the hard drive of a computer until overwritten by other correspondence, and are usually retrievable during a forensic examination of the computer.

## BACKGROUND ON KIK MESSENGER

9.   Kik Messenger, commonly called Kik, is a freeware instant messaging mobile app from the Canadian company Kik Interactive, available free of charge on iOS and Android operating systems. It uses a smartphone's data plan or Wi-Fi to transmit and receive messages, photos, videos, sketches, mobile webpages, and other content after users register a username. Kik is known for its features preserving users' anonymity, such as allowing users to register without providing a telephone number. The application logs user IP addresses, which the company can use to determine location. Kik is commonly seen by law enforcement as an app used to communicate with minors as well as exchange images/videos of child exploitation material. Because of its use of the internet to transmit data, Kik is a facility or means of interstate commerce.

## PROBABLE CAUSE

### THE CANADIAN INVESTIGATION

10. In November 2015, RCMP British Columbia Integrated Child Exploitation Unit (BC ICE) received information from the United States Department of Homeland Security (DHS), Homeland  Security Investigations (HSI) regarding an individual, with the associated Kik usernames  "horneeym31" and "horneym32," who had traded child pornography on Kik.

11. On March 11, 2016, Vernon RCMP executed a Search Warrant at the address of 14-3705 24 Ave., Vernon, BC. Child Pornography was located on media seized from the residence. Norman Paul SPERLING was arrested and confessed to the offenses in an

13

interview. He was charged with Accessing Child Pornography contrary to Section

163.1(4.1) of the Criminal Code of Canada, Possession of Child Pornography contrary to

Section 163.1(4) and Distribution of Child Pornography contrary to Section 163.1(3) of

the Criminal Code of Canada. On April 6, 2017, SPERLING plead guilty to Possession

of Child Pornography and was later sentenced to six (6) months jail, followed by three (3)

years of probation, five (5) years prohibition - Sexual Offense and was to pay a $200

Victim Surcharge.

12. Using SPERLING's Kik accounts, the RCMP and other law enforcement found

various networks of users trading child pornography via Kik. Several groups of Kik

users who traded child pornography included a user using "buzzkill17421" as a

username.

13. On June 17, 2018, an RCMP analyst reviewed records provided by Kik and

determined that the user "buzzkill17421" had sent child pornography files, as defined by

the Criminal Code of Canada, directly to other Kik users. There was no group content

provided. The RCMP analyst noted that the user had sent potentially identifying files, and

files that indicated that the user may have access to a pre-pubescent female child who he

may be actively sexually abusing/exploiting.

14. On June 18, 2018, the images were queried by the RCMP in the International

Child Sexual Exploitation Image Database (ICSE DB) and determined to not have been

previously uploaded/identified. Due to the fact that the images had not been previously

seen by law enforcement, they were documented as a new series with the series name

"bright trim panties."

15. On June 20, 2018, the DHS requested records concerning "buzzkill17421" from

Kik. On June 21, 2018, Kik provided the following information about the subscriber:
        Date of production:June 21, 2018

        First Name:      Buzz

Last Name:       K

Email:        buzzkill17421@yahoo.com (unconfirmed)

Username: buzzkill17421

Registration date: 9/24/2015.

2018/05/26 23:48:17 UTC USER_LOCATION US (tz: Unknown, ip: 166.170.36.189)

Date/time Timestamp Device Extra data

2018/05/25 22:36:39 UTC 1527287799769 CIP "ip":"64.30.97.69", "remotePort":"49201", "chatNetwork":"Unknown"

2018/05/25 22:43:34 UTC 1527288214303 CIP "ip":"166.137.178.137", "remotePort":"3238", "chatNetwork":"Unknown"

2018/05/25 22:50:07 UTC 1527288607990 CIP "ip":"166.137.178.137", "remotePort":"41518", "chatNetwork":"Unknown"

2018/05/25 23:05:30 UTC 1527289530080 CIP "ip":"64.30.97.69", "remotePort":"49248", "chatNetwork":"Unknown"

2018/05/25 23:14:50 UTC 1527290090059 CIP "ip":"64.30.97.69", "remotePort":"49250", "chatNetwork":"Unknown"

2018/05/25 23:17:47 UTC 1527290267766 CIP "ip":"64.30.97.69", "remotePort":"49254", "chatNetwork":"Unknown"

2018/05/25 23:26:29 UTC 1527290789029 CIP "ip":"64.30.97.69", "remotePort":"49279", "chatNetwork":"Unknown"

2018/05/25 23:27:50 UTC 1527290870014 CIP "ip":"64.30.97.69", "remotePort":"49285", "chatNetwork":"Unknown"

2018/05/25 23:29:05 UTC 1527290945687 CIP "ip":"64.30.97.69", "remotePort":"49286", "chatNetwork":"Unknown"

2018/05/25 23:40:33 UTC 1527291633815 CIP "ip":"166.170.38.250", "remotePort":"41561", "chatNetwork":"Unknown"

2018/05/25 23:43:46 UTC 1527291826689 CIP "ip":"166.170.38.250", "remotePort":"48321", "chatNetwork":"Unknown"

2018/05/25 23:57:56 UTC 1527292676188 CIP "ip":"166.170.38.250", "remotePort":"15897", "chatNetwork":"Unknown"

2018/05/26 00:02:45 UTC 1527292965088 CIP "ip":"166.170.38.250", "remotePort":"3927", "chatNetwork":"Unknown"

2018/05/26 00:08:30 UTC 1527293310668 CIP "ip":"166.170.38.250", "remotePort":"55811", "chatNetwork":"Unknown"

2018/05/26 00:17:55 UTC 1527293875010 CIP "ip":"166.170.38.250", "remotePort":"34346", "chatNetwork":"Unknown"

2018/05/26 00:24:29 UTC 1527294269216 CIP "ip":"64.30.97.69", "remotePort":"49330", "chatNetwork":"Unknown"

2018/05/26 00:51:06 UTC 1527295866824 CIP "ip":"64.30.97.69", "remotePort":"49338", "chatNetwork":"Unknown"

2018/05/26 00:51:19 UTC 1527295879459 CIP "ip":"64.30.97.69", "remotePort":"49339", "chatNetwork":"Unknown"

2018/05/26 02:26:21 UTC 1527301581055 CIP "ip":"64.30.97.69", "remotePort":"49384", "chatNetwork":"Unknown"

2018/05/26 06:37:42 UTC 1527316662202 CIP "ip":"64.30.97.69", "remotePort":"49512", "chatNetwork":"Unknown"

2018/05/26 16:08:24 UTC 1527350904029 CIP "ip":"166.170.36.189", "remotePort":"50473", "chatNetwork":"Unknown"

2018/05/26 20:01:22 UTC 1527364882056 CIP "ip":"166.170.36.189", "remotePort":"35692", "chatNetwork":"Unknown"

2018/05/26 23:48:17 UTC 1527378497051 CIP "ip":"166.170.36.189", "remotePort":"29885", "chatNetwork":"Unknown"

16. Using the login data provided by Kik for "buzzkill17421," and the IP address 64.30.97.69, HSI determined that the IP address was leased by Consolidated Communications, Inc. in Roseville, California.

15

17. On June 22, 2018, DHS requested records from Consolidated Communications, Inc. for who was leasing the IP address of 64.30.97.69, and Consolidated Communications, Inc. provided the following information:

> **Customer ID: 283757**
> **BRIAN FORMICONI**
> **317 Harvest Sky Ct**
> **Roseville, CA 95747-7178**

18. On July 1, 2018, the RCMP provided HSI Vancouver with a report detailing chats and child pornography that had been recovered during a review of the Kik user's ("buzzkill17421") account content. The following details the child exploitation material, which was sent by "buzzkill17421" to other Kik users and described by RCMP analysts:

    a.  File Name: 1481668602-5358d45c-5a37-4db6-9f8e-d38410fa8802
        Shaw1Base32 Hash Value: 3M63MGS4MG3I6TXBBZVLAA6KP5DYKCG5
        Sender: **buzzkill17421**
        Recipient: tkatfisme
        Type of Content Shared: Gallery
        Date/Time: 2016-12-13 22:36:42 UTC

File Description: This is an image of a nude prepubescent female child approximately seven (7) to ten (10) years old, and an adult male. The prepubescent female child is masturbating the adult male's penis.

    b.  File Name: 1499836497-e44b1969-8b5a-4a56-8ee1-cd5efc63dfde
        Shaw1Base32 Hash Value: E4IOVU4FC2MB5LPE6PEZM3MQ7A57DKBH
        Sender: buzzkill17421
        Recipient: joecool246
        Type of Content Shared: demonfox816
        Date/Time: 2017-07-12 5:14:57 UTC

File Description: This is a one minute and twenty second (01:20) video of a nude child, approximately three (3) to five (5) years old, and a partially nude adult female. The adult female is lying on a bed digital manipulating her vagina, while the child's full hand is in the adult female's vagina.

c.  File Name: 1499836475-5ff2e4d4-b69e-4366-ab9e-dcf87c302d31
Shaw1Base32 Hash Value: UPC2T6M5WT37IQC6WEKC2IRU2FL6KTDG
Sender: buzzkill17421
Recipient: joecool246
Type of Content Shared: demonfox816
Date/Time: 2017-07-12 5:14:57 UTC

File Description: This is a forty-five second (00:45) video of a child,
approximately three (3) to five (5) years old, and an adult male. The prepubescent female
child is lying on her back, with her legs spread. She is only visible from her chest down.
The adult male is trying to force his penis into the prepubescent female child's vagina.

## THE SEARCH OF FORMICONI'S HOME

19. An examination of the Facebook social media profiles of FORMICONI and
FORMICONI's wife showed pictures of FORMICONI consistent with the profile picture
of "buzzkill17421" provided by Kik.

20. On July 3, 2018, law enforcement executed a federal search warrant at
FORMICONI's home in Roseville, California, in the State and Eastern District of
California.

21. During the forensic preview of a Toshiba laptop belonging to FORMICONI's
wife, agents found a video titled "(darkmatter) (pthc)(ptsc) (opva) 8yr blonde(2)(1).wmv"
that depicts a young girl between the ages of 7 and 10 mostly nude, touching her vaginal
area, she goes to a coach, bends over and exposes her anus. Then the girl turns to face
the camera and exposes her vaginal area. The date of the download was January of 2015.
During an interview of FORMICONI's wife, FORMICONI's wife denied downloading
the file, and stated that her husband also used the Toshiba laptop. FORMICONI's wife
stated that she was aware that FORMICONI had viewed adult pornography in the past.

## CONCLUSION

22. Based on the aforementioned factual information, I respectfully submit that there
is probable cause that BRIAN FORMICONI a/k/a "buzzkill17421" knowingly distributed

child pornography via Kik Messenger between December 13, 2016 and July 12, 2017 in violation of 18 U.S.C. § 2252(a)(2). I submit that probable cause exists that BRIAN FORMICONI received or transported child pornography in violation of 18 U.S.C. § 2252(a)(2) on or about January of 2015. I submit that probable cause exists that BRIAN FORMICONI possessed child pornography from at least January of 2015 through July 3, 2018.

I swear, under penalty of perjury, that the foregoing Information is true and correct, to the best of my knowledge, information and belief.

_____
Dana M. Unger
Special Agent, Homeland Security
Investigations

Read and approved as to form.

_____
ROGER YANG
Assistant United States Attorney

Subscribed and sworn to before me
this _3rd_ day of ~~February~~ July, 2018

_____
Carolyn K. Delaney
United States Magistrate Judge
Eastern District of California
Sacramento, California