THOMAS A. JOHNSON, #119203
MONICA A. QUINLAN, #325465
Law Office of Thomas A. Johnson
400 Capitol Mall, Suite 2560
Sacramento, California 95814
Telephone: (916) 422-4022

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>BRIAN BAPTISTE FORMICONI,<br><br>　　　　Defendant. | Case No.: 2:18-cr-00141 KJM<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>DATE: September 12, 2022<br>TIME: 10:00 am<br>COURT: Hon. Kimberly J. Mueller |

### I.   SENTENCING MEMORANDUM

Brian Formiconi ("defendant"), by and through his attorneys, Thomas A. Johnson and Monica A. Quinlan, respectfully submits this Sentencing Memorandum and recommends that the Court sentence him to a total of 180 months of imprisonment (the mandatory minimum) to be followed by ten years of supervised release (with the minimum term of supervised release being five years). As set forth below, this sentence, while still serious enough to emphasize the gravity of the offense, is more reasonable than the government's recommendation of 210 months, which is greater than necessary to achieve the goals and interests of the sentencing factors in 18 U.S.C. § 3553(a). The government has requested that the Court find that the applicable Guideline range in this matter is 210 to 262 months – however, it would justified in this case for the Court to engage in either departures, variances, or the exercise of its own sound discretion, in order to impose a sentence below that range.

## II. RELEVANT PROCEDURAL HISTORY

On July 25, 2018, a grand jury indicted Mr. Formiconi on multiple counts. (CR 1.) On September 9, 2021, he pled guilty to Count One of the Indictment, charging him with sexual exploitation of a child (18 U.S.C. § 3143(a)(2)), pursuant to a plea agreement. By doing so, he accepted responsibility for his conduct and the facts as set forth in the Factual Basis for the Plea. He also forfeited all rights, title, and interest to multiple electronic devices, and waived his right to a jury trial.

As agreed upon, the government, in addition to the U.S. Probation Office, has recommended the low end of the applicable guideline range (210 months), which includes a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a+b). The government has concluded that Mr. Formiconi's Total Offense Level is 37, with a Criminal History Calculation of I, thus leading to the 210-262 month range for sentencing. The defense does not dispute this calculation. The government has agreed that both Mr. Formiconi's depression, and the dysfunctional relationship with his wife, contributed to the offense. It has also been agreed that Mr. Formiconi will pay $35,000 in victim restitution as a result of this case, however, because any requested restitution will inevitably be paid out of joint financial resources, Dr. Malain (his wife) requests that the court not impose resititution. (PSR at ¶22.)

## III. SENTENCING FACTORS TO BE CONSIDERED

A. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

Although Mr. Formiconi admittedly exchanged child pornography over an app-based messenger platform called "Kik" (PSR at ¶¶5-6), engaged in inappropriate direct chats with others (PSR at ¶¶7-10), and produced the images underlying this offense (PSR at ¶¶8-10), his conduct did not involve sexual contact or depictions of hands-on abuse of the victim, and no faces were visible in the images (PSR at ¶7.). This is mitigating because sexual contact, hands-on abuse, and/or the inclusion of face visuals, would have dramatically increased the severity of this case. The conduct in this case occurred

between approximately September 24, 2015 and August 16, 2017. (PSR at ¶6.) The images were analyzed by law enforcement in June of 2018, and a search warrant was executed the following month. (PSR at ¶7.) He has remained incarcerated since his arrest. (PSR at ¶3.)

Thus, although Mr. Formiconi's offense results in a high guidelines range, it is less aggravating than many federal crimes involving child exploitation. There is no evidence of the defendant impeding or obstructing justice in this case. (PSR at ¶23.) Furthermore, and importantly, he has no previous documented criminal history. His wife was shocked by the news, and she did not expect it from him. (PSR at ¶15.) She was relieved that no hands-on abuse was depicted, and that it sounded like Mr. Formiconi had not "do[ne] anything" to her seven-year-old daughter, aside from taking the images. Therefore, the nature and circumstances of this offense are entirely unprecedented for him. Mr. Formiconi has remained incarcerated since his arrest on July 3, 2018. (PSR at ¶3.)

B. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Formiconi grew up an outcast among his peers, and he mostly kept to himself. His parents divorced when he was fourteen years old. (PSR at ¶50-51.) He describes being depressed in his childhood, and having been bullied, with no close friends to speak of. (*Ibid*.) He reported that he has been depressed for as long as he can remember, and that he had constant suicidal thoughts for about two years. At age 15, he states that he attempted suicide by ingesting an excessive amount of (unknown) pills. He threw up the pills and his parents did not know how depressed he was. (PSR at ¶61.) He did not receive any counseling in his youth, and carried his depression into adulthood. (PSR at ¶61.) He graduated high school in 1991, with a grade point average of 2.35.

Mr. Formiconi states that he met his wife in 2000 while they were both attending California State University, Sacramento, where he ultimately earned a bachelor's degree in molecular biology in 2002 and a teaching credential in 2004. (PSR at ¶52.) He then attended Gonzaga University's master's program for organizational leadership in

Spokane, Washington, from 2014 to 2016, but records have not been received. (PSR at ¶65.) The couple was married in 2009. (PSR at ¶52.) He states that he was finally clinically diagnosed with depression in 2010, when they were living in Minnesota.

Mr. Formiconi has a respectable work history. Between January 1995 and July 2004, he worked in scheduling rehabilitative services for patients at Sutter General Hospital in Sacramento, as confirmed by his wife. Later, as an unpaid requirement for receiving his teaching credential, Mr. Formiconi worked as a summer high school teacher for about a month in the summer of 2004, which his wife confirmed. Between July 2004 and January 2005, Mr. Formiconi reported that he was a lab technician prior to being laid off, which was also confirmed by his wife. Between October 2005 and August 2009, Mr. Formiconi worked as a medical curriculum specialist and office support staff member at the Chicago Medical School that his wife attended. He voluntarily resigned when the couple moved to Minnesota for her medical residency in 2009. Between August 2009 and 2011, Mr. Formiconi was unemployed due to a lack of job opportunities in Minnesota. (PSR at ¶66.) In 2012, he became a full-time caregiver for his children, and his wife financially supported the household. (PSR at ¶66.)

As stated above, Mr. Formiconi has no prior documented criminal history. The government has also admitted that his depression disorder and dysfunctional relationship with his wife contributed to the occurrence of these events. Mr. Formiconi has written a letter to the court, which is attached as Exhibit A. He writes of his deep regret, sorrow, and shame regarding the offense, and he knows that he has caused irreparable damage to people he was supposed to love and protect. He states that his conscience will forever be haunted by his actions, and that his conduct occurred during a very dark time in his life. In the letter, Mr. Formiconi explains that he and his wife struggled with starting a family. They went through the burdens of in-vitro fertilization (IVF) and his wife became pregnant with twin girls, one of who was tragically stillborn after 33 weeks. Additional IVF treatments followed, and they had twin boys about a year after their surviving daughter was born premature. One of the boys struggled with both physical and mental

health problems, including a rare liver disease that typically results in death before the age of five. Thankfully, he is now ten years old and healthy, but both boys require special needs assistance as a result of autism.

Despite high costs of their health insurance, one of the boys' daily therapy needs costed the parents $100 a day, out-of-pocket. (See Exhibit A – Letter from Brian Formiconi.) Mr. Formiconi's wife has also confirmed that one of the boys was diagnosed with ADHD, and suffered from emotional and physical outbursts, but that they improved over time. In addition to the rare liver disease, one of the boys was also diagnosed with Anderson's Disease, and there were many trips to the hospital as a result. (PSR at ¶55.) The boy nearly needed a liver transplant – and although his wife was determined to not be an eligible donor, Mr. Formiconi still might be.

Mr. Formiconi's wife confirmed that after their daughter died, he was never the same, and that she frequently found him sobbing in grief. (PSR at ¶53.) Their surviving daughter, who spent three weeks in the hospital after her birth, was hospitalized again within a year, due to meningitis. (PSR at ¶53.) It was an extremely difficult time for Mr. Formiconi, and his wife noted that she noticed a change in his behavior as a result – he became more withdrawn, and slept more often. (PSR at ¶53.)

Mr. Formiconi has described himself as having been in charge of all of the children's needs while his wife worked full-time. The children were engaged in organized sports, including swimming, basketball, and gymnastics, and the family took annual trips to Disneyland and to the beach. They celebrated holidays together and Mr. Formiconi understandably expressed to his wife that caring for the boys was challenging and overwhelming at times, and that he found it difficult to relate to them. (PSR at ¶56.) It was difficult for him to deal with the significant amount of damage that one of the boys caused to their house and property, as well as the disorganization and stress that their special needs brought upon him. He turned to abusing pain medicine as a coping method. (PSR at ¶56.)

Between the birth of their sons, and Mr. Formiconi's arrest, the couple argued over additional IVF treatments to replace the daughter that they had sadly lost. (See Exhibit A – Letter from Brian Formiconi.) The disagreement broke their marriage. In addition, his wife's mother moved into an adjacent apartment with the couple, and relied on them for groceries, mail, and transportation to many medical appointments. She suffered from various physical and mental health problems, and tragically, she committed suicide prior to the family moving to Roseville. He had affectionately referred to his wife's mother as his own "mom." Mr. Formiconi's wife has confirmed that her mother's passing was devastating for him, and that they did not have time to grieve her death because their son's liver disease diagnosis occurred just three months later. (PSR at ¶57.)

Mr. Formiconi's life was in a downward spiral. Following the tragedy of his daughter's stillbirth, his sons' health problems, heavy medical costs, and daily special needs, as well as the serious and ongoing martial issues with his wife, Mr. Formiconi fell into another deep depression. When the family moved to California in 2015, the couple slept in separate rooms and Mr. Formiconi suffered from insomnia. (PSR at ¶57.) His wife also confirmed that he underwent panic attacks, lack of energy, and periods of time when he was so extremely withdrawn that he did not exercise basic hygiene. (PSR at ¶57.) Like many others who struggle with depression, he turned to vices: substance abuse, gambling, and pornography. (See Exhibit A – Letter from Brian Formiconi.) He had a nervous breakdown and was taken to a hospital. He contemplated hurting himself, and concluded that his life was no longer manageable. He attended psychiatry appointments and although his wife noted some improvement, he was committed on multiple occasions for psychiatric services. (PSR at ¶57.)

Mr. Formiconi's wife has stated that he is not a bad person, but that he is mentally ill and needs help for substance abuse. (PSR at ¶58.) She is a medical professional, and she believes that his mental illness and drug use directly contributed to his criminal conduct. (PSR at ¶57.) In addition to his depression and addiction, Mr. Formiconi states that he also suffers from arthritis in his neck, as well as gastroesophageal reflux disease

(GERD), irritable bowel syndrome (IBS), and sleep apnea. He states that he takes five forms of prescription medication for these conditions. (PSR at ¶60.)

Mr. Formiconi accepts full responsibility for his actions and understands that he must and should be punished for them. He respectfully requests that the court see fit to impose 180 months of imprisonment, and ten years of supervised release. He is deeply sorry, especially to his family.

### C. THE NEED FOR THE SENTENCE IMPOSED TO –

#### 1. REFLECT THE SERIOUSNESS OF THE OFFENSE, AND PROMOTE RESPECT FOR THE LAW

The seriousness of this offense is adequately reflected in the felonious conviction of child exploitation and the resulting requirement for sexual offender registration. His name will never be clear of this offense, and it will haunt him forever. A sentence of 210 months is not necessary for the seriousness of the offense to be reflected at sentencing – that is already well understood by the defendant. As a result, 180 months, to be followed by ten years of supervision, would be adequate to fulfill this purpose. Mr. Formiconi has already expressed his respect for the law in accepting responsibility and agreeing that he should be punished for it.

#### 2. TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE

Punishment should be sufficient, but not greater than necessary, to fulfill the purposes of sentencing as outlined in 18 U.S.C. § 3553 and set forth in this sentencing memorandum. (18 U.S.C § 3553(a).) As discussed herein, many of these purposes are already fulfilled by Mr. Formiconi's expression of his deep shame, regret, and sorrow for having engaged in the criminal conduct. When we consider this in combination with his explanations of the many tragedies affecting his life at the time, and with his struggles with depression and substance abuse, it is clear that Mr. Formiconi was a broken person at the time.

### 3. TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT AND PROTECT THE PUBLIC FROM FURTHER CRIMES

A sentence of 180 months and ten years of supervision would ensure that Mr. Formiconi's actions, even though they did not include sexual contact or any depictions of hands-on abuse, would still be justly punished. This, in combination with his own shame and ache for having committed the offense, would deter him from any future criminal conduct. He understands the damage that he has caused and he is endlessly sorry for it, therefore there is no indication that he would wish to cause any further damage or hardship for his family. Moreover, ten years of supervision would adequately ensure that, even far into the future, that he will remain in compliance with the law and not cause any further harm, either to his family, or the public, in any way. To impose a lifetime period of supervision for a contactless offense is greater than necessary to achieve the purposes of sentencing in this case. Lifetime supervision, and the resources it necessarily consumes, should be reserved for the most aggravated cases. Moreover, if there are any violations of a ten-year supervision period, the court may have the option of reassessing that grant of supervision.

### 4. TO PROVIDE THE DEFENDANT WITH THE NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER

Mr. Formiconi has stated that he did not engage in counseling prior to his arrest. Such counseling, and/or other mental health treatment, would likely assist in improving his conditions and preventing further criminal conduct. A ten year period of supervision would be adequate to encourage his progress in obtaining any needed mental health or other medical care. This would be an effective method of protecting the public. A lifetime period of supervision is greater than necessary to achieve this sentencing purpose. Moreover, a shorter period of imprisonment – 180 months, instead of 210, would place Mr. Formiconi in the best position to reintegrate himself into mental health treatment within the community sooner, rather than relying on incarceration-based treatment, which

may not be of the best quality, and may be more heavily impacted by high demand and low supply in correctional settings.

### D. THE KINDS OF SENTENCES AVAILABLE, AND THE KINDS OF SENTENCE AND SENTENCING RANGE ESTABLISHED BY THE UNITED STATES SENTENCING COMMISSION

Mr. Formiconi is statutorily ineligible for probation. (18 U.S.C. § 3561(a)(2).) The minimum term of imprisonment is 15 years and the maximum term is 30 years. (18 U.S.C. § 2251(e).) The guideline range is 210 to 260 months, with a Criminal History Category of I, and a Total Offense Level of 37. The court must also impose a term of supervised release of five years to life. (18 U.S.C. § 3583(k).) Thus, in accordance with that statute, the guideline range for supervised release is five years to life. (U.S.S.G. § 5D1.2(b)(2).) The maximum fine is $250,000. (18 U.S.C. § 3571(b).) There is also a mandatory special assessment fine of $100. (18 U.S.C. § 3013.) The guideline fine range for this offense is $40,000 to $250,000. (U.S.S.G. § 1324.) Mr. Formiconi may also be liable for up to tens of thousands of dollars in prosecution, incarceration, and supervision costs. In other words, he likely faces continuing financial ruin as a result of this case, and he is already incarcerated with no assets or income to speak of. The only factor working against a finding of indigency is his education and respectable, professional work history.

Under 18 U.S.C. § 3553, the court shall impose a sentence of the kind, and within the range, referred to in the guidelines unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. To determine whether a circumstance was taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. (18 U.S.C. § 3553(b)(1).)

Despite detailing his history of mental and physical problems in the PSR, as well as the emotional and unprovoked tragedies that have continuously plagued his life, the

probation department found no factors that would warrant a sentence outside of the applicable guideline range. (PSR at ¶¶94, 97-98.) However, the information covered in the PSR does establish factors that would warrant a sentence below the applicable guideline range. For example, the sentencing guidelines do not consider how the loss of a child, endless and serious physical and mental complications involving one's children, a loved one's sudden suicide, and serious depression can affect an individual's criminal culpability. These are necessarily factors that must be considered in a case-by-case context, as 18 U.S.C. § 3553 requires. Sentencing is not solely an opportunity to impose an impactful sentence, it is a calling to separate the worst cases from the less aggravating ones. In fulfilling this purpose of sentencing, the court must consider the history and characteristics of the defendant, and the nature and circumstances of the offense.

Given the personal background information provided in the PSR, and reiterated in this sentencing brief, there is reason to find that these factors are mitigating enough to justify imposition of the mandatory minimum – 180 months of imprisonment. Moreover, the defense proposes that, to balance this justifiable reduction and provide for an ample period of supervision, a ten year term of supervision following his release would be appropriate. This would protect public safety and fulfill the purposes of sentencing without imposing a sentence that is greater than necessary.

E. THE NEED TO PROVIDE RESTITUTION TO ANY VICTIMS

Mr. Formiconi's wife has requested that restitution not be ordered, since it would inevitably come from joint financial resources. (PSR at ¶22.) Moreover, the longer Mr. Formiconi is ordered to remain in custody, the longer it will take for him to return to work. With his future job opportunities sure to be severely and negatively impacted by this conviction and his federal prison commitment, if the court anticipates any restitution beyond the already significant costs of prosecution and incarceration, it would be best for him to be able to return to work as soon as possible. The time it will take him to search for and obtain employment with any decent pay is likely to be lengthy.

While incarcerated, he is likely to earn only very minimal pay, a negligible amount compared to his current debts of over $48,000 (PSR at ¶72) and any court case costs. The sooner he is able to begin his job search, the less reliant he will be on public-funded resources. Given California's especially high costs of living, and the current inflation crisis, imposing the mandatory minimum sentence would assist him in returning to work, and thus being able to pay any restitution costs. He also does not own a car, and would likely need to purchase one to travel to and from employment – thus adding to his need to return to some form of work as soon as possible.

The probation department has recommended that restitution and the fine of up to $250,000 be waived completely, and that only the $100 special assessment, and a $5,000 fine under the Juvenile Victims of Trafficking Act of 2015 (JVTA), be imposed. The probation department specifically stated in the PSR that any restitution amount ordered will have a negative financial impact on the victim. (PSR at p. 23, ¶3.) The defense is requesting to waive the $5,000 JVTA fine, since despite his work history, Mr. Formiconi's employment opportunities will likely be severely impacted by this conviction, and he will still have other serious financial challenges to address following the conclusion of this case.

### IV.  CONCLUSION

In light of the sentencing factors to be considered by the court pursuant to 18 U.S.C. § 3553, both the nature and circumstances of the offense, and the history and characteristics of the defendant, in accordance with the government's recommendation, support the imposition of a low sentence in this case. Mr. Formiconi respectfully requests that, in consideration of his struggles with mental health, depression, and the numerous uninvited personal tragedies that have plagued him throughout his life, that the court see fit to utilize a departure or variance to impose a sentence below the applicable range.

Therefore, a sentence of 180 months in federal prison, in addition to ten years of supervised release, would be a justified sentence in this case, pursuant to the factors to be

considered under 18 U.S.C. § 3553. The defense thanks the court for its sincere and wise consideration of this important matter.

DATED:  September 6, 2022

Respectfully submitted,

/s/ Thomas A. Johnson
THOMAS A. JOHNSON
Attorney for Brian Formiconi

/s/ Monica A. Quinlan
MONICA A. QUINLAN
Attorney for Brian Formiconi